IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

ANDRE D. FLAGG, #310705      )
                                       )
               Plaintiff,          )
                                       )
        v.                        )    CASE NO. 1:17-CV-858-WHA-CSC
                                       )           (WO)
                                       )
J.  TRAYWICK, *et al.,*        )
                                       )
           Defendants.      )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION[1]

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed on December 20, 2017, by Andre D. Flagg, a pretrial detainee at the Houston County Jail. In the complaint, the plaintiff alleges that on November 11 or 12, 2017[2], the defendants used excessive force against him and were deliberately indifferent to his medical needs. (Doc. 1 at pp. 2-3).  The named defendants are Houston County Jail Corrections Deputies Roy Caine, Walter Marshall, James West, Justin Waters, James Traywick, and Physician Assistant Jason Smoak.  The plaintiff sues these defendants in their individual and official capacities and asks that "all parties involved should to be terminated from employment."  (Doc. 1 at p. 4).

---

[1] All documents and attendant page numbers cited herein are those assigned by the Clerk of this court in the docketing process.

[2] The documents produced in this matter demonstrate that there was no incident between the plaintiff and the defendant deputies on this date and no presentation by the plaintiff to the Houston County Jail health clinic for treatment.  Rather, the incident about which the plaintiff appears to complain occurred on November 6, 2016.  (Docs. 37-1 at p. 2, 37-4 at pp. 2-3).

The defendants filed a special report (Doc. 30, Exs. 1-10) and supplemental special reports (Doc. 31, Ex. 1-4, Doc. 38, Ex. 1), which included relevant evidentiary materials in support of this report, specifically affidavits and prison documents, addressing the claims presented by Flagg. In these documents, the defendants deny they acted with deliberate indifference to Flagg's physical and medical needs and deny that they used excessive force against him. Furthermore, the defendants raise the defense of exhaustion in their special report. (Doc. 30 at pp. 6-8). Indeed, the Prison Litigation Reform Act ("PLRA") requires that "inmates complaining about prison conditions exhaust prison grievance remedies before initiating a lawsuit." *Jones v. Bock,* 549 U.S. 199, 202 (2007). Thus, the defendants argue that because the Houston County Jail utilizes a grievance procedure and the plaintiff failed to file an appeal regarding any grievance underlying the allegations of his complaint, he has failed to exhaust his administrative remedies and his claims are barred. (Doc. 30 at p. 8).

After reviewing the special report and exhibits, the court issued an order on July 2, 2018, requiring Flagg to file a response to the defendants' special report, supported by affidavits or statements made under penalty of perjury and other evidentiary materials. (Doc. 40). This order specifically cautioned that "**unless within ten (10) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to this order] and **without further notice to the parties** (1)

treat the special report and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." (Doc. 40 at 4).  Flagg filed responses to this order. (Doc. 37, Ex. 1-5 and Doc. 68).  Pursuant to the directives of the order entered on July 2, 2018, the court now treats the defendants' special report as a motion to dismiss with respect to the failure to exhaust claims and as a motion for summary judgment as to any remaining claims and concludes that judgment is due to be granted in favor of the defendants.

## II.  STANDARD OF REVIEW

Based on the foregoing, the court deems it appropriate to treat the special report filed by the defendants as a motion to dismiss with respect to the exhaustion defense. Thus, this case is now pending on the defendants' motion to dismiss.  *Bryant v. Rich*, 530 F.3d 1368, 1374–75 (11th Cir. 2008) (internal quotations omitted) ("[A]n exhaustion [defense]. . . is not ordinarily the proper subject for a summary judgment [motion]; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment."); *Trias v. Florida Dept. of Corrections*, 587 F. App'x 531, 534 (11th Cir. 2014) (holding that the district court properly construed Defendant's "motion for summary judgment as a motion to dismiss for failure to exhaust administrative remedies[.]").

However, to the extent that the court concludes that the plaintiff has properly exhausted his administrative remedies as to any claim, the court will address the merits of those claims on summary judgment. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (internal quotation marks omitted); Rule 56(a), Fed. R. Civ. P. ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–24; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir.

4

2011) (holding that moving party discharges his burden by showing the record lacks evidence to support the nonmoving party's case or the nonmoving party would be unable to prove his case at trial).

When the defendants meet the evidentiary burden, as they have in this case, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials], the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]"); *Jeffery*, 64 F.3d at 593–94 (holding that, once a moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact). In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Beard v.*

*Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).  This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment.  *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014); *Barker v. Norman*, 651 F.2d 1107, 1115 (5th Cir. Unit A 1981) (stating that a verified complaint serves the same purpose of an affidavit for purposes of summary judgment).  However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."  *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor such that summary judgment is not warranted.  *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007).  The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986), Fed. R. Civ. P. 56(e).  "A mere 'scintilla' of evidence supporting the supporting party's position will not suffice[.]"  *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).  Only disputes involving material facts are relevant, materiality is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248.

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.  At the summary judgment stage, this court should accept as true "statements in [the plaintiff's] verified complaint, [any] sworn response to the officers' motion for summary judgment, and sworn affidavit attached to that response[.]" *Sears v. Roberts*, 2019 WL 1785355, *3 (11th Cir. April 24, 2019); *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (holding that a plaintiff's purely self-serving and uncorroborated statements "based on personal knowledge or observation" set forth in a verified complaint or affidavit may create an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (citations omitted) ("To be sure, [Plaintiff's] sworn statements are self-serving, but that alone does not permit [the court] to disregard them at the summary judgment stage . . . . Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving."). However, general, blatantly contradicted and merely "[c]onclusory, uncorroborated allegations by a plaintiff in [his verified complaint or] an affidavit . . . will not create an issue of fact for trial sufficient to defeat a well-

supported summary judgment motion." *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (*citing Earley v. Chamption Int'l Corp*., 907 F.2d 1077, 1081 (11th Cir. 1990). In addition, conclusory allegations based on purely subjective beliefs of a plaintiff and assertions of which he lacks personal knowledge are likewise insufficient to create a genuine dispute of material fact. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-24; *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (holding that to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). "[T]here must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citation omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for

purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and pro se complaints are entitled to liberal interpretation, a pro se litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, Flagg's pro se status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

The court has undertaken a thorough and extensive review of all the evidence in this matter. (Doc. 30 Ex. 1-10, Doc. 37 Ex. 1-5, Doc. 38 Ex. 1, Doc. 68). After such review, the court finds that Flagg has failed to exhaust his administrative remedies on each of his claims relating to the incident on November 6, 2016, and that this action could be dismissed solely on the basis of exhaustion. Indeed, Flagg never filed any grievance as a result of the November 6, 2016 incident or the lack of medical care he claims as a result of that incident. (Doc. 37-2, 37-3). As an alternative basis of dismissal, however, the court further finds that Flagg has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants on his Eighth Amendment medical deliberate indifference and excessive force claim.

### III.  STATEMENT OF FACTS

In his complaint, the plaintiff alleges that "on approximately 11.11.17, the plaintiff while in Houston County Jail was assaulted by named correctional officers while hand cuffed behind the back and shackled causing multiple injurys {sic}to the face and back of the hand in a {sic} illegal holding cell." (Doc. 1 at p. 3).  He also alleges "due to being physically assaulted by the above named officers the plaintiff need {sic} outside medical surgery for the back of his head, lip and left eye." *Id.*  Finally, he claims that "the plaintiff has filed grievances through H.C.J.'s kiosk machine and administration thwart the plaintiff's grievance process, with all attempts to exhaust remedies."  *Id.*  However, the documents produced in this matter demonstrate that there was no incident between the plaintiff and the defendant deputies on November 11 or 12, 2017 and no presentation on or around this date by plaintiff to the Houston County Jail Health Clinic for treatment. Rather, the incident about which the plaintiff appears to complain occurred on November 6, 2016. (Docs. 37-1 at p. 2, 37-4 at pp. 2-3).

Defendant Deputy Officer Traywick testified concerning this incident as follows:

15.  On November 6, 2016, Deputy Marshall and I went to Plaintiff's cell to collect Plaintiff's meal tray and cup.  I opened the cell door and Plaintiff threw his tray and cup at me.  The tray contained food and feces which hit me in the chest. The cup contained urine which splattered on the floor and wall.  I deployed OC spray towards Plaintiff and closed the door to await a backup officer before entering Plaintiff's cell.  Marshall called for assistance and Deputy Waters arrived. We opened the cell door and instructed Plaintiff to lay on his stomach so he could be handcuffed and taken to be decontaminated.   Plaintiff refused to lie on his stomach and was combative with his fists balled up in a defensive stance.  We entered the cell.  We moved the inmate to the floor in order to place handcuffs on

him.  No force other than what was required was used in moving Plaintiff to the floor.  Plaintiff did not appear to be injured in this movement and was not acting like he was injured.

     16.  We instructed Plaintiff several times to put his hands behind his back so that he could be cuffed.  Plaintiff refused and continued to lay on his hands.  After several orders Plaintiff moved his hands out from under him and handcuffs were placed on his wrists.  Deputies then assisted Plaintiff to his feet so that he could be taken to be decontaminated.  Plaintiff began walking out of his cell and was a few steps ahead of the officers.  He slipped in urine and feces that he had thrown and fell to the floor.  The Deputies picked Plaintiff up to his feet.  He had a small abrasion above his left eye and a cut on his lip.  Waters and Marshall escorted Plaintiff to the medical clinic to be decontaminated and to be examined for any injury.

     17.  I and the other Corrections Deputies used no more force than necessary in defending ourselves from Plaintiff's aggressive actions.  Defendant's actions were only taken in defense and were taken in response to Plaintiff's aggressive actions.  Plaintiff did not appear to be significantly injured and Plaintiff was not acting like he was injured after this incident.  Plaintiff was examined by medical staff following this incident and no significant injury was found.

(Doc. 31-1 at pp. 4-5).  With respect to the medical treatment provided, Jason Smoak,

physician assistant, testified as follows:

     4.  Plaintiff was examined in the Houston County Jail medical clinic on November 6, 2016 and November 7, 2016.  Plaintiff was not found to have any significant injury or medical problem.  At no time, was Plaintiff denied adequate medical care during his incarceration in the Houston County Jail.  Specifically, Plaintiff was not denied medical care as a result of the November 6, 2016 incident.

(Doc. 31-3 at pp. 1-2). Furthermore, the medical records demonstrate that Plaintiff was

seen in the medical clinic on the evening of November 6, 2016 within minutes after the

incident and a "small" laceration to his outer and inner lip was noted with little bleeding.

The wound was cleaned and a recheck ordered for the following morning.  (Doc. 30-10 at

p. 3; Doc. 37-4 at p. 3).  Medical records from the morning of November 7, 2016 noted some swelling to Plaintiff's lower lip and a "small" laceration inside his lip.  The wound was cleaned. Further, noted was a "small abrasion mild" near Plaintiff's left eyebrow area.  Also, it was noted that Plaintiff moved all his extremities and ambulated without difficulty.  (Doc. 30-10 at p. 2; Doc. 37-4 at p. 2).

James Brazier, who assumed the position of Jail Commander over the Houston County Jail on August 1, 2017, and prior to that served as the Assistant Jail Commander, filed an affidavit with the Court stating as follows:

> 3.  During the incarceration at issue in this lawsuit Plaintiff was both a pretrial and a convicted inmate.  Plaintiff was booked in the Houston County Jail on December 13, 2015 on charges of felony murder.  Plaintiff was transferred into the custody of the Alabama Department of Corrections on October 10, 2017.  Plaintiff was convicted and sentenced on September 20, 2017.

> 4.  The Houston County Sheriff's Office operates the Houston County Jail according to a written set of policies and procedures which govern the conduct of persons employed at the jail.

> 5.  All deputies at the Houston County jail are charged with the responsibility of reporting infractions by fellow deputies and reporting any problem to the senior deputy present immediately upon learning of the problem.

> 6.  I have had no indication that my jail training, policies, procedures or supervision were likely to result in violations of an inmate's constitutional rights.  There is no history of abuse by correctional officers or medical staff in the Houston County Jail.

> 7.  The Houston County Jail has a grievance policy for inmates to express complaints.  When an inmate has a grievance, the inmate may submit a grievance to jail staff.  Inmates use a kiosk to submit grievances and any other types of communication to jail staff.  If a kiosk is not functioning, inmates are provided with paper forms to communicate with jail staff.  A grievance will be promptly

investigated and answered by a member of jail staff.  Most grievances are answered by the grievance deputy.  Grievances of an emergency nature may be made orally and are handled immediately.  No negative action will be taken against an inmate as a result of filing a grievance.  If an inmate is dissatisfied with the response to the grievance, he or she may appeal in writing up the chain of command to the Sheriff.

8.  A copy of the Houston County Jail Inmate Rulebook, which contains instructions for submitting a grievance and other jail rules, is issued to each inmate as part of the booking process.  Inmates, including Plaintiff, are well aware of the grievance procedures in place in the Houston County Jail.

9.  Plaintiff has submitted numerous grievances during his incarcerations.  However, Plaintiff has not submitted any grievance regarding the allegations of his complaint.  To my knowledge, the Plaintiff did not submit a grievance to any other member of jail staff regarding any allegations contained in this lawsuit.  Thus, Plaintiff has failed to follow the grievance procedures in place at Houston County Jail.

10.  Inmates at the Houston County Jail interact with jail staff multiple times a day.  Thus, Plaintiff had multiple opportunities to contact members of jail staff and file a grievance or to appeal a response that he received within jail rules.

11.  It is the policy of the Houston County Sheriff's Office that all inmates confined in the Houston County Jail be in compliance with all inmate rules.  Inmates are aware of inmate rules through the Inmate Rulebook issued at booking.  Inmate compliance with all jail rules and policies is vital for the safety, security and orderly operation of the jail.

12.  It is the Houston County Jail policy to remove an inmate from normal population to segregated or administrative housing when an inmate is threatening the security or orderly operation of the facility.  Inmates are housed in segregated or administrative housing both for their own protection and for the protection of other inmates and jail staff.  Corrections Deputies must establish and keep control of the inmates to operate a secure facility.

13.  On November 6, 2016, Plaintiff was being housed as an assault risk in administrative segregation due to his violent actions and assaults on jail staff.  On numerous occasions before this date Plaintiff had damaged jail property, refused to

follow jail rules and instructions from jail deputies, and assaulted other inmates and jail deputies.

14.  I have reviewed documentation from the interaction between Plaintiff and Corrections Deputies on November 6, 2016.  Defendants used no more force than necessary in defending themselves against Plaintiff's aggressive actions. Defendants actions were only taken in defense and were taken in response to Plaintiff's aggressive actions.  Plaintiff did not appear to be significantly injured and Plaintiff was not acting like he was injured after this incident.  Plaintiff was examined by medical staff following this incident and no significant injury was found.

15. Jail records establish that Plaintiff suffered no unconstitutional treatment while confined in the Houston County Jail.

16.  I certify and state that the records from the Houston County Jail attached to the Special Report are true and correct copies of the inmate records maintained at the Houston County jail in the regular course of business.  I am the custodian of these records.

17.  I declare under penalty of perjury that the foregoing is true and correct. I further declare that I am competent to make this declaration, and that the above statements were made by drawing from my personal knowledge of the situation.

(Doc. 30-5 at pp. 1-4).  The Houston County Jail Statement of Inmate Rules sets out the

Grievance Procedure as follows:

1.  Grievances are by individual inmate only.  If more than one inmate has the same grievance, each inmate must submit their own grievance.  Inmates may only submit one grievance per day.

2.  Complete the grievance providing as much detail as possible in the space provided for the inmate.  Each grievance may only address one issue and the grievance cannot contain cuss words or any disparaging comments about any person.  The grievance must be submitted within three days of the event that is the basis of the grievance.  The inmate shall state in their grievance the details and the date of the event made the basis of the grievance.  **Grievances that do not conform to policy are returned without the grievance issue being addressed.**

14

3. The Grievance Deputy has 15 days to investigate and answer the grievance.

**4. If the inmate is not satisfied with the response to the grievance, the inmate may appeal the decision using a grievance appeal form. An appeal form may be obtained by asking sheriff's office personnel for an appeal form. The completed grievance appeal form shall be placed in the secure box. The appeal must be submitted within 3 days from the date the inmate is notified of the initial decision. The sheriff's office member hearing the appeal will have 30 days to answer the appeal.**

**5. If an inmate is dissatisfied with the response to an appeal, they may repeat the appeal procedures as detailed in item 4 until they reach their third, and final appeal. The Jail has a three appeal process and the response to the third appeal is the final decision.**

6. If an inmate has an emergency, he or she may make an oral request to any member of the sheriff's staff. The sheriff staff member will immediately notify a supervisor who will investigate the emergency grievance. An emergency is anything that affects the immediate, life, safety, or health of the inmate or the security and safety of the facility.

7. All grievances are tracked to ensure that (1) inmate's grievances are answered; (2) inmates have followed the rules regarding filing grievances and appeals.

(Doc. 30-9 at p. 8) (Emphasis added).

Further, the Houston County Jail Statement of Inmate Rules sets out the

Sanction/Discipline Procedure as follows:

Inmates who commit rules violations will be sanctioned or disciplined based on the severity of violation and history of pervious {sic} violations. Any inmate who has more than nine previous sanctions will have all rule violations treated as discipline offenses.

Inmates who received a sanction will have certain privileges suspended for a pre-determined amount of time based upon the number of sanctions the inmate has received.

15

Anytime a staff member witnesses, or learns of, an inmate committing an offense warranting a sanction the staff member will complete a sanction form.

**The inmate will receive a copy of the sanction form as soon as practicable after the completion of the process. The inmate may appeal the sanction to the Jail Commander within 1 day after receiving their notice of sanction.**

**The Jail Commander, or his designee, will answer the inmate's appeal. There is no further administrative appeal of a sanction beyond the Jail Commander.**

Inmates who receive a discipline will have their privileges suspended and receive lockdown time based upon the type of offense the inmate committed.

Anytime a staff member witnesses, or learns of, an inmate committing an offense warranting a disciplinary the staff member will complete a disciplinary form.

**The inmate will receive a copy of the disciplinary notice as soon as practicable after the completion of the process. The disciplinary notice will advise the inmate of the procedures, process, and what they may do.**

**The inmate will receive notice of their disciplinary hearing at least twenty-four hours prior to the hearing. The inmate may waive their hearing by signing the Waiver of Hearing form.**

**After the disciplinary hearing and determination, the inmate may appeal the determination to the Jail Commander within 1 day after receiving their notice of the outcome of the discipline hearing. The Jail Commander, or his designee, will answer the inmate's appeal. There is no further administrative appeal of a discipline beyond the Jail Commander.**

(Doc. 30-9 at pp. 8-9). (Emphasis added).

In response to the defendants' special reports, the plaintiff filed numerous documents concerning his efforts to appeal grievance decisions. (Doc. 37-2 at pp. 1-22 and Doc. 37-3 at pp. 1-10). These documents reflect that the plaintiff never filed any grievance as a result of the November 6, 2016 incident. *Id.* Moreover, there are no documents before this court which demonstrate any sanctions or disciplinaries issued as a result of the November 6, 2016 incident and no documents reflecting any appeals or

16

attempted appeals from this incident. (Doc. 30-8 at pp. 1-15; Doc. 38-1 at pp. 1-26).

Although Plaintiff raises no conditions claims in the instant action, it is noteworthy that

court has previously concluded Flagg failed to exhaust his administrative remedies on his

conditions claims for the period of March 21, 2016 through August 30, 2017 for lack of

access to sufficient toilet facilities and access to his mat and blanket and dismissed those

claims on that basis.  *See,* Recommendation of the Magistrate Judge, *Flagg v. Reed,*

1:17cv642, RAH-SMD, August 4, 2020 (Doc. 116 at p. 29), *adopted* by J. Huffaker on

September 18, 2020 (Docs. 123, 124).

## IV. DISCUSSION

### A.  EXHAUSTION

The defendants raise the defense of exhaustion in this action.  In addressing the

requirements of 42 U.S.C. § 1997e as to exhaustion, the Eleventh Circuit has

> recognized that "[t]he plain language of th[is] statute makes exhaustion
> a precondition to filing an action in federal court." *Higginbottom v.
> Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000) (per curiam) (quoting
> *Freeman v. Francis*, 196 F.3d 641, 643–44 (6th Cir. 1999)). This means
> that "until such administrative remedies as are available are exhausted,"
> a prisoner is precluded from filing suit in federal court. *See id.*
> (affirming dismissal of prisoner's civil rights suit for failure to satisfy
> the mandatory exhaustion requirements of the PLRA); *Harris v.
> Garner*, 190 F.3d 1279, 1286 (11th    Cir. 1999) ("reaffirm[ing] that
> section 1997e(a) imposes a mandatory requirement on prisoners seeking
> judicial relief to exhaust their administrative remedies" before ***filing*** suit
> in federal court), *modified on other grounds*, 216 F.3d 970 (11th Cir.
> 2000) (en banc); *Miller v. Tanner*, 196 F.3d 1190, 1193 (11th Cir. 1999)
> (holding that under the PLRA's amendments to § 1997e(a), "[a]n inmate

incarcerated in a state prison . . . must first comply with the grievance procedures established by the state department of corrections before filing a federal lawsuit under section 1983."); *Harper v. Jenkin*, 179 F.3d 1311, 1312 (11th Cir. 1999) (per curiam) (affirming dismissal of prisoner's civil suit for failure to satisfy the mandatory exhaustion requirements of § 1997e(a)); *Alexander v. Hawk*, 159 F.3d 1321, 1328 (11th Cir. 1998) (affirming dismissal of prisoner's *Bivens* action under § 1997e(a) for failure to exhaust administrative remedies prior to filing suit in federal court).

*Leal v. Georgia Dept. of Corrections*, 254 F.3d 1276, 1279 (11th Cir. 2001) (emphasis in original). Furthermore, the law is well-settled that "the question of exhaustion under the PLRA [is] a threshold matter that [federal courts must] address before considering the merits of the case. Because exhaustion is mandated by the statute, [a federal court has] no discretion to waive this requirement." *Myles v. Miami-Dade County Correctional and Rehabilitation Dept.*, 476 F. App'x 364, 366 (11th Cir. 2012) (internal quotation marks omitted) (citing *Chandler v. Crosby*, 379 F.3d 1278, 1286 (11th Cir. 2004) and *Alexander v. Hawk*, 159 F.3d 1321, 1325–26 (11th Cir. 1998)). The court will therefore "resolve this issue first." *Myles*, 476 F. App'x at 366.

When deciding whether a prisoner has exhausted his remedies, the court should first consider the plaintiff's and the defendants' versions of the facts, and if they conflict, take the plaintiff's version of the facts as true. If in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed. If the complaint is not subject to dismissal at this step, then the court should make specific findings in order to resolve the disputed factual issues related to

exhaustion." *Myles*, 476 F. App'x at 366 (internal quotation marks omitted) (citing *Turner v. Burnside,* 541 F.3d 1077, 1082 (11th Cir. 2008). Consequently, a district court "may resolve disputed factual issues where necessary to the disposition of a motion to dismiss for failure to exhaust [without a hearing]. The judge properly may consider facts outside of the pleadings to resolve a factual dispute as to exhaustion where doing so does not decide the merits, and the parties have a sufficient opportunity to develop the record." *Trias*, 587 F. App'x at 535 (internal citations omitted). Based on the foregoing, the Eleventh Circuit specifically rejected the argument that "disputed facts as to exhaustion should be decided by a jury [or other factfinder]." *Id*.

Upon review of the complaint, the defendants' special reports and the undisputed evidentiary materials filed in support thereof and the plaintiff's response to the special report and documents filed therewith, the court concludes that the defendants' motion to dismiss is due to be granted for the plaintiff's failure to exhaust his Eighth Amendment claims of excessive force and a lack of sufficient medical care. Indeed, the Houston County Jail's grievance policy states that an inmate may file a grievance via the kiosk system and if unsatisfied with the response may appeal to the sheriff's office personnel by obtaining an appeal form from the sheriff's office and completing it and returning it to a secure box within a specified time. If an inmate is unsatisfied with the response, this process maybe repeated a second time. (Doc. 25-2 at p. 8). The policy specifically states

that "[t]he Jail has a three appeal process and the response to the third appeal is the final decision". *Id.*

In response to the defendants' special reports, the plaintiff filed numerous documents concerning his efforts to appeal grievance decisions.  (Doc. 37-2 at pp. 1-22). After careful review of these documents, the court concludes that the plaintiff failed to pursue the three-appeal grievance process for the incident occurring on November 6, 2016. Indeed, he failed to file any grievance at all for this incident.  Moreover, there are no documents before this court which demonstrate any sanctions or disciplinaries issued as a result of the November 6, 2016 incident and no documents reflecting any appeals or attempted appeals from this incident. (Doc. 30-8 at pp. 1-15; Doc. 38-1 at pp. 1-26). Accordingly, the court concludes that the plaintiff's failures to exhaust his remedies for the November 6, 2016 incident mandate dismissal of his Eighth Amendment claims concerning his alleged deprivation of access to healthcare and his claim for excessive force. *Leal,* 254 F.3d at 1279.

The court is mindful that the plaintiff claims the defendants thwarted his efforts to exhaust his grievance processes.  (Doc. 1 at p. 3).  Specifically, he claims that he was given frivolous responses to his grievances and appeals.  (Doc. 37 at p. 7).  However, he fails to produce any evidence to support this claim, since in this instance the plaintiff fails to demonstrate that he ever filed a grievance based on the November 6, 2016 incident. Further, he claims that the defendants took his carbon paper and so "he couldn't make a

carbon copy of grievance (first) for case no 1:17cv858-WHA."   (Doc. 68 at p. 2).

However, he fails to demonstrate how his lack of access to carbon paper prevented him

from filing a grievance in this instance.   Indeed, the evidence is undisputed that Flagg

filed numerous grievances and appeals for disciplinaries and sanctions arising from

incidents other than those occurring on November 6, 2016.   (Doc. 37-2 at pp. 1-22; Doc.

37-3 at pp. 1-10).   Importantly, the grievance and appeals documents before the court

demonstrate that the jail had a grievance process and a sanction-appeal process, both of

which were accessible to the plaintiff and that the plaintiff utilized these processes many

times for other incidents, but not with respect to the November 6, 2016 incident.   The

Court could dismiss this action solely on the basis of plaintiff's failure to exhaust;

however, out of an abundance of caution and as an alternative basis for dismissal, the

court hereafter will address the merits of the plaintiff's excessive force and medical

deliberate indifference claims.

## B.   MEDICAL TREATMENT

Plaintiff claims that the medical defendants were deliberately indifferent to his

medical needs because when he was seen in healthcare at the Houston County Jail on

November 6 and 7, 2016 he "need[ed] outside medical surgery for the back of his head,

lip and left eye" which was denied to him. (Doc. 1 at p. 3).

> That medical malpractice—negligence by a physician—is insufficient to
> form the basis of a claim for deliberate indifference is well settled. *See
> Estelle v. Gamble,* 429 U.S. 97, 105–07, 97 S. Ct. 285, 292, 50 L.Ed.2d 251

21

(1976); *Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir. 1995).  Instead, something more must be shown.  Evidence must support a conclusion that a prison [medical care provider's] harmful acts were intentional or reckless. *See Farmer v. Brennan,* 511 U.S. 825, 833–38, 114 S. Ct. 1970, 1977–79, 128 L.Ed.2d 811 (1994); *Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir. 1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams,* 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. DeKalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1191 n. 28 (11th Cir. 1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *Qian v. Kautz,* 168 F.3d 949, 955 (7th Cir. 1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

In order to establish "deliberate indifference to [a] serious medical need . . . , Plaintiff[] must show: (1) a serious medical need; (2) the defendant['s] deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009).  When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248,1255 (11th Cir. 1999) (holding that, for liability to attach, the official must know of and then disregard an excessive risk to the prisoner). Regarding the objective

component of a deliberate indifference claim, the plaintiff must first show "an objectively 'serious medical need[]' . . . and second, that the response made by [the defendants] to that need was poor enough to constitute 'an unnecessary and wanton infliction of pain,' and not merely accidental inadequacy, 'negligen[ce] in diagnos[is] or treat[ment],' or even '[m]edical malpractice' actionable under state law." *Taylor*, 221 F.3d at 1258 (internal citations omitted).  To proceed on a claim challenging the constitutionality of medical care, "[t]he facts alleged must do more than contend medical malpractice, misdiagnosis, accidents, [or] poor exercise of medical judgment." *Daniels v. Williams*, 474 U.S. 327, 330–33 (1986).

In addition, "to show the required subjective intent . . . , a plaintiff must demonstrate that the public official acted with an attitude of deliberate indifference . . . which is in turn defined as requiring two separate things[:] awareness of facts from which the inference could be drawn that a substantial risk of serious harm exists [] and . . . draw[ing] of the inference[.]" *Taylor*, 221 F.3d at 1258 (internal quotation marks and citations omitted).  Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (holding that defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known

risk to serious condition to warrant finding of deliberate indifference).  Furthermore, "an

official's failure to alleviate a significant risk that he should have perceived but did not,

while no cause for commendation, cannot under our cases be condemned as the infliction

of punishment." *Farmer*, 511 U.S. at 838.  When medical personnel attempt to diagnose

and treat an inmate, the mere fact that the chosen "treatment was ineffectual . . . does not

mean that those responsible for it were deliberately indifferent."  *Massey v. Montgomery*

*County Det. Facility*, 646 F. App'x 777, 780 (11th Cir. 2016).

> In articulating the scope of inmates' right to be free from deliberate
> indifference, . . . the Supreme Court has . . . emphasized that not "every
> claim by a prisoner that he has not received adequate medical treatment
> states a violation of the Eighth Amendment." *Estelle,* 429 U.S. at 105, 97 S.
> Ct. at 291; *Mandel* [*v. Doe*, 888 F.2d 783, 787 (11th Cir. 1989)].  Medical
> treatment violates the eighth amendment only when it is "so grossly
> incompetent, inadequate, or excessive as to shock the conscience or to be
> intolerable to fundamental fairness."  *Rogers*, 792 F.2d at 1058 (citation
> omitted).  Mere incidents of negligence or malpractice do not rise to the
> level of constitutional violations. *See Estelle,* 429 U.S. at 106, 97 S. Ct. at
> 292 ("Medical malpractice does not become a constitutional violation
> merely because the victim is a prisoner."); *Mandel*, 888 F.2d at 787–88
> (mere negligence or medical malpractice 'not sufficient' to constitute
> deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical
> malpractice does not constitute deliberate indifference).  Nor does a simple
> difference in medical opinion between the prison's medical staff and the
> inmate as to the latter's diagnosis or course of treatment support a claim of
> cruel and unusual punishment. *See Waldrop,* 871 F.2d at 1033 (citing
> *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir. 1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).  "[A]s *Estelle* teaches, whether

government actors should have employed additional diagnostic techniques or forms of

24

treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545 (citation and internal quotation marks).   To show deliberate indifference, the plaintiff must demonstrate a serious medical need and then must establish that the defendant's response to the need was more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor*, 221 F.3d at 1258 (citation and internal quotation marks omitted); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) (holding that "[a] difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (holding that the mere fact an inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (holding that prison medical personnel do not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with that of the inmate-patient); *Amarir v. Hill*, 243 F. App'x 353, 354 (9th Cir. 2007) (holding that defendant's "denial of plaintiff's request to see an outside specialist . . . did not amount to deliberate indifference."); *Arzaga v. Lovett*, 2015 WL 4879453, at *4 (E.D. Cal. Aug. 14, 2015) (finding that plaintiff's preference for a second opinion is "not enough to establish defendant's deliberate indifference" as the allegation does "not show

that defendant knowingly disregarded a serious risk of harm to plaintiff" nor that defendant "exposed plaintiff to any serious risk of harm.").

Defendant, Jason Smoak, physician assistant, testified that Plaintiff was examined in the Houston County Jail Medical Clinic on November 6, 2016 and November 7, 2016 and he was not found to have any significant injury or medical problem. (Doc. 31-3 at pp. 1-2). Indeed, the medical records demonstrate that Plaintiff was seen in the medical clinic on the evening of November 6, 2016 within minutes after the incident and a "small" laceration to his outer and inner lip was noted with little bleeding. The wound was cleaned and a recheck ordered for the following morning. (Doc. 30-10 at p. 3; Doc. 37-4 at p. 3). Medical records from the morning of November 7, 2016 noted some swelling to Plaintiff's lower lip and a "small" laceration inside his lip. The wound was cleaned. Further, noted was a "small abrasion mild" near Plaintiff's left eyebrow area. Also, it was noted that Plaintiff moved all his extremities and ambulated without difficulty. (Doc. 30-10 at p. 2; Doc. 37-4 at p. 2).

Plaintiff states in his Complaint that he was denied "outside medical surgery for the back of his head, lip and left eye." (Doc. 1 at p. 3). He also complains in his response to the defendants' special report that "Jason Smoak along with Houston County Jail's administration willingly used/covered up the usage of an illegal intergrating communications device (secret service shy ware) and denied his request for MRI's brain scans to locate and remove it." (Doc. 37 at p. 10). However, the medical records

unequivocally show that Flagg received prompt medical treatment at Houston County Jail medical clinic for the minor injuries he received as a result of the November 6, 2016 incident.  The fact that Flagg wanted medical treatment different than what was actually provided does not amount to deliberate indifference.  *Hamm,* 774 F.2d at 1575. Accordingly, summary judgment is due to be granted on the plaintiff's medical deliberate indifference claims.

## C.  EXCESSIVE FORCE

Claims of excessive force by prison officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999).  "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (internal quotations and citations omitted).  "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'"  *Sims v. Artuz*, 230 F.3d 14, 22 (2nd Cir. 2000) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

The standard applied to an Eighth Amendment excessive force claim contains both a subjective and objective component.  *Hudson*, 503 U.S. at 8.  The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind."  *Id.*

(internal quotations omitted).   To establish the subjective element, a plaintiff must demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." *Sims*, 230 F.3d at 21.   With respect to the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Hudson*, 503 U.S. at 8.   In addition, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Id*. at 4.   "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts.   An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010).

Summarizing the excessive force standard in the prison context, the Eleventh Circuit wrote:

> [u]nder the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.1973)); *see also Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).   To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7-8, 112 S.Ct. 995; *see also*

28

> *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson*, 481 F.2d at 1033).

*Skrtich v. Thornton*, 280 F.3d 1295, 1300-1301 (11th Cir. 2002).

Recently, the Eleventh Circuit applied the *Whitley* factors in a §1983 action brought by a pro se prisoner for injuries he received during the inspection of his cell after he failed to follow an order from the defendant prison officers. *Miles v. Jackson,* 757 F. App'x. 828 (11th Cir. 2018). In *Miles,* the court identified the five factors relevant in determining whether force was applied "maliciously or sadistically" as "(1) the need for the application of force; (2) the relationship between that need and the amount of force used; (3) the threat 'reasonably perceived by the responsible officials,' . . . (4)'any efforts made to temper the severity of the use of a forceful response,'" and "(5) [t]he absence of serious injury." *Id.,* at 829 citing *Hudson,* 503 U.S at 7; quoting *Whitley,* 475 U.S. at 321.

Moreover, the Eleventh Circuit has stated that "[w]hen evaluating whether the force used was excessive, we give broad deference to prison officials acting to preserve discipline and security." *Pearson v. Taylor*, 665 F. App'x 858, 863 (11th Cir. 2016) (citing *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990); *Hudson*, 503 U.S. at 7 (holding that courts are to "give a wide range of deference to prison officials acting to

preserve discipline and security.").  In addition, the determination "must not be made in the glow of hindsight."  *Griffin v. Troy State Univ.,* 128 F. App'x 739, 742 (11th Cir. 2005) (citation omitted).  "Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding." *Bennett*, 898 F.2d at 1533.  Generally, correctional officers are authorized to use force when a prisoner "fails to obey an order.  Officers are not required to convince every prisoner that their orders are reasonable and well-thought out before resorting to force." *Pearson*, 665 F. App'x at 864 (internal citation omitted).

In considering the application of the *Whitley* factors to the instant case, the court recognizes at the outset that Plaintiff does not dispute the fact that he threw feces and urine on Defendant Officers Traywick and Marshall when they opened his cell to collect his cup and tray.  Nor does he dispute that he refused orders to lay on his stomach and to put his hands behind his back to be cuffed.  (Doc. 31-1 at p. 4).  Rather, he claims in his Complaint, without providing specific details, that he "was assaulted by named correctional officers while handcuffed behind the back and shackled causing multiple injuries to the face and back of the hand."  (Doc. 1 at p. 3).  Also, in his response to the defendants' special report, he again makes the cursory allegation that on November 6, 2016 he was "assaulted by the defendants . . . [and] received substantial injuries to the back of his head, above his left eye brow and a reinjury to his bottom lip needing surgical

stitches.  (Doc. 37 at p 10).   Thus, the court concludes that the need for force arose from

Flagg's failure to obey orders from Defendant Officers.  *Pearson*, 665 F. App'x at 864.

With regard as to whether Plaintiff posed a threat and as to the reasonableness of

the force used, it is undisputed that on November 6, 2016, Plaintiff was being "housed as

an assault risk in administrative segregation due to his violent actions and assaults on jail

staff.   On numerous occasions before this date, Plaintiff had damaged jail property,

refused to follow jail rules and instructions from jail deputies and assaulted other inmates

and jail deputies."  (Doc. 30-5 at p. 3).   Specifically, concerning the amount of force

used, it is undisputed that after refusing an order to lay on his stomach, Flagg became

"combative with his fists balled up in a defensive stance."  (Doc. 31-1 at p. 4).  Officer

Traywick further testified that "[w]e moved the inmate to the floor in order to place

handcuffs on him.  No force other than what was required was used in moving Plaintiff to

the floor.  Plaintiff did not appear to be injured in this movement and was not acting like

he was injured."  (Doc. 31-1 at p. 5).  After a careful review of the record, the court

concludes that Plaintiff offers no specific facts to dispute this testimony.  Thus, the court

concludes that the amount of force used by the correctional defendants was justified by

the plaintiff's non-compliance and resistance and the need to restore order.  Accordingly,

the court concludes that the first four Whitley factors weigh against the plaintiff's claim

of excessive force.  Finally, the court notes that the plaintiff's injuries – a laceration to his

lip and an abrasion above his left eyebrow - were relatively minor and were promptly

treated and cleaned.  (Doc. 30-10 at p. 2; Doc. 37-4 at p. 2).  Thus, the court concludes that summary judgment is due to be granted on plaintiff's excessive force claim.

Accordingly, it is RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motions to dismiss and for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be DISMISSED with prejudice.

4.  No costs be taxed.

On or before **February 5, 2021**, the parties may file objections to this Recommendation.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made.  Frivolous, conclusive, or general objections to the Recommendation will not be considered.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 22nd day of January, 2021.

/s/   Charles S. Coody
UNITED STATES MAGISTRATE JUDGE